## Case No. 17,195.

### WARREN v. EMERSON.

[1 Curt. 239.] [1]

Circuit Court, D. Maine. Sept. Term, 1852.

NEGOTIABLE INSTRUMENTS—TRANSFER IN TRUST—DEFENCES.

1. A transfer of a negotiable note and mortgage to the plaintiff, to indemnify him, and agreeing to retransfer them if indemnified, *held*, not a legal mortgage, but a conveyance in trust.

2. The maker of the note, having acquired the equitable interest of the assignor, may use it in his defence to an action at law on the note.

This was an action by the indorsee of a promissory note against the maker. At the time the note was indorsed to the plaintiff, he gave to the indorser, who was also the payee of the note, the following memorandum, in writing:

"Boston, December 22, 1848. Whereas, Nathaniel Hatch, of Porter township, state of Pennsylvania, has this day indorsed and delivered over to me the note of Albert Emer-

---

[1] [Reported by Hon. B. R. Curtis, Circuit Justice.]

son, of Bangor, dated September 14, 1847, for the sum of twelve hundred dollars, payable in two years from the date thereof, with interest; which note is secured by mortgage of land in Bangor, Maine, named in the mortgage deed of September 10, 1847, and this day assigned to me by said Hatch; all of which is done to hold me harmless against the payment of my two acceptances this day to said Hatch's order, payable at the Bank of Commerce, in Philadelphia, for the sum of five hundred dollars each, at six months from date; and on the payment of said acceptances, on the day on which the same are payable, and the sum of fifty dollars, I agree to deliver said note, and reassign said mortgage to said Hatch. Henry Warren."

Only one of the plaintiff's acceptances was negotiated by Hatch, who failed to take it up at its maturity; and it was ultimately paid by the plaintiff. On the second day of November, 1850, Hatch gave to Emerson the following order:

"Bangor, November 2, 1850. Henry Warren, Esq. Dear Sir:—Having settled with Albert Emerson the amount due on mortgage from him to me, the same which I assigned to you, you will assign said mortgage to him, or discharge the same, as he may direct, upon his satisfying your claim on the same. Nathaniel Hatch."

The question was, whether the plaintiff could recover of the defendant any greater sum than was necessary for his indemnity, and the sum of fifty dollars, mentioned in the memorandum.

Mr. Warren, pro se.
Mr. Rowe, for defendant.

CURTIS, Circuit Justice. The memorandum, given by the plaintiff to Hatch, declares the trust upon which the note and mortgage were held by him. The legal effect of the arrangement was, that the plaintiff became the holder of the legal title to the note and mortgage, clothed with an equitable right to apply their proceeds to his own indemnification; and that, subject to this right of the plaintiff, the equitable interest and ownership remained in Hatch. In other terms, the plaintiff held the note and mortgage in trust, to apply so much of their proceeds as might be needful to indemnify himself and pay the sum of fifty dollars, and the residue to pay to Hatch.

It has been argued, that the transaction amounted to a legal mortgage of a chattel, which became absolute in sixty days after the breach of the condition, according to the local law of Maine. But to constitute a technical legal mortgage, there must be a condition in the conveyance, or in some defeasance making part of the same transaction, by the mere force of which the title is revested in the mortgagor, if the condition is performed. This memorandum does not contain such a condition; it provides for a retransfer of the title from the plaintiff to Hatch, if the acceptances shall be paid by Hatch at their maturity; and

if it did set out such a condition, still it would not amount to a defeasance, so as to constitute a technical mortgage, because an interest in the realty was conveyed by deed, and the instrument of defeasance must be under seal. It is true, the note is a chattel; but it can hardly be, that the interest in the realty was intended to be held by one species of title, and the note by another. Both were transferred to the plaintiff for the same purpose, and as one transaction; both were agreed to be retransferred by him at the same time, and in the same event; and the note and mortgage together, made one security. To suppose that the parties intended to mortgage the note, and convey the interest in the realty in trust, is quite inadmissible. This renders it unnecessary to examine the cases in 2 Barb. 538, 3 Hill, 593, and 2 Comst. [2 N. Y.] 443, which, being either pledges or mortgages of stocks, are distinguishable from this case.

I am of opinion this was not a legal mortgage, but a taking of security by way of an absolute transfer of the whole legal title, leaving the equitable title to the proceeds in Hatch, subject to the plaintiff's rights, above stated. This being so, Hatch could certainly transfer his equitable title to Emerson, and by his order on the plaintiff, has done so. In Mandeville v. Welch, 5 Wheat. [18 U. S.] 286, the supreme court say: "In cases where an order is drawn for the whole of a particular fund, it amounts to an equitable assignment of that fund; and, after notice to the drawee, it binds the fund in his hands." The question is, whether Emerson can avail himself of this equitable title in his defence. There are certain equitable titles, which courts of law, in modern times, take notice of and give effect to. Among them are assignments of choses in action, which are protected by courts of law from all adverse proceedings by the holder of the legal title; and I can perceive no reason why this equitable title, gained by Emerson through the assignment from Hatch, should not be protected. It is true that, ordinarily, it is only the assignee of the whole chose in action who is protected; and the doctrine is not extended to partial assignments. Mandeville v. Welch, 5 Wheat. [18 U. S.] 277. But here the whole chose in action, arising out of the written promise of the plaintiff to Hatch, is assigned to Emerson; and the reason of the limitation of the doctrine can have no application to this case; that reason is, that a debtor cannot, by having a demand split up by partial assignments, be made accountable to different persons without his own consent. But here the debtor does consent: he is himself the assignee. It is true, the person here seeking protection for an equitable title, is the debtor; he desires to avail himself of it in his defence, valeat quantum. But why should he not be allowed to do so, as well as a plaintiff be allowed to make a similar title the ground of a valid claim? There is one reason for allowing this de-

fence, which often determines courts of law to give effect to defences. It prevents circuity of action. If the plaintiff should recover the whole sum of Emerson, he could sustain a suit in equity, or an action for money had and received, in the name of Hatch, to recover from the plaintiff, under his written memorandum, whatever may remain after his claims are satisfied. I do not perceive that there is any thing inconsistent with established modes of proceeding at the common law, in doing complete justice between the parties in this action, by giving effect to the equitable title of the defendant. It is a new case, in its facts, but I think not in its principles. Neponset Bank v. Leland, 5 Metc. [Mass.] 259. A judgment will, therefore, be entered for the amount paid by the plaintiff, and interest and cost of protest of the bill; and to this is to be added the sum of fifty dollars, and interest from the 22d June, 1849, the time when that sum was agreed to be paid.